**Carl Wayne MONTGOMERY,**
**Appellant(s),**

v.

**Patricia Ann MONTGOMERY,**
**Appellee(s).**

**Court of Appeals Case No**
**10A01-1511-DR-01910**

Supreme Court of Indiana.

February 9, 2017

Trial Court Case No. 10C04-0911-DR-256

Order

This matter has come before the Indiana Supreme Court on a petition to transfer jurisdiction, filed pursuant to Indiana Appellate Rules 56(B) and 57, following the

issuance of a decision by the Court of Appeals. The Court has reviewed the decision of the Court of Appeals, and the submitted record on appeal, all briefs filed in the Court of Appeals, and all materials filed in connection with the request to transfer jurisdiction have been made available to the Court for review. Each participating member has had the opportunity to voice that Justice's views on the case in conference with the other Justices, and each participating member of the Court has voted on the petition.

Being duly advised, the Court DENIES the petition to transfer. All pending motions are DENIED as moot.

FOR THE COURT

Rucker, Massa, and Slaughter, JJ., concur.

David, J., dissents with separate opinion in which Rush, C.J., joins.

Rush, C.J., joins.

DAVID, J., dissenting from the denial of transfer.

I respectfully dissent from the denial of transfer. In finding that the trial court's order granting Mother's petition to modify custody of A.M. was clearly erroneous, I am afraid the Court of Appeals engaged in impermissible reweighing of evidence. It seems to me that such a significant departure from accepted law warrants review by this Court and I would grant transfer to affirm the trial court's order.

Our standard of review is clear. Custody modifications are reviewed for an abuse of discretion. Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002). In doing so, we set aside a judgment only when it is clearly erroneous. Id. A finding is clearly erroneous if there are no facts or inferences drawn therefrom to support it. Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011). An appellate court does not reweigh the evidence or judge the credibility of witnesses, but will rather consider the evidence most favorable to the judgment. Meehan v. Meehan, 425 N.E.2d 157, 161 (Ind. 1981). It is not enough that the evidence might have supported a different conclusion; to reverse the trial court, the evidence must lead to but one conclusion. Steele–Giri v. Steele, 51 N.E.3d 119, 124 (Ind. 2016). The reasons for such deferential treatment were explained long ago in Brickley v. Brickley:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

247 Ind. 201, 210 N.E.2d 850, 852 (1965). Here, the Court of Appeals acknowledged the well-established preference "for granting latitude and deference to our trial judges in family matters," but nonetheless engaged in reweighing of evidence. Montgomery v. Montgomery, 59 N.E.3d 343, 349 (Ind. Ct. App. 2016) (citing Steele–Giri, 51 N.E.3d at 124).

The procedure for modifying a custody order requires fulfillment of two requirements. Pursuant to Indiana Code Section 31–17–2–21, a court may not modify a child custody order unless the non-custodial parent can show that 1) modification is in the child's best interest, and 2) there is a substantial change in one of several enumerated factors listed under Indiana Code

Section 31–17–2–8. Mother, who sought modification of custody here, bore the burden of proving that the existing custody order should have been altered. See Steele–Giri, 51 N.E.3d at 124.

The trial court held that Mother carried her burden and I agree that there was sufficient evidence to support that decision. The record shows the trial court conducted an extensive hearing, spanning two days, and heard testimony from seven different witnesses, including both parents, A.M.'s guardian ad litem, and the custody coordinator. In addition to the live testimony, the trial judge, who was familiar with the case, reviewed years-worth of documents in a detailed 14-page order to conclude that modification was warranted.

In its order, the trial court first noted that it was in A.M.'s best interest to have frequent, meaningful, and continuing contact with Mother. The trial court went on to find that Father's allegations about Mother's new boyfriend's abusive behavior toward A.M. were, not only fabricated, but also intended to disrupt A.M.'s frequent, meaningful, and continuing contact with Mother. The trial court went on to find that, as a result of the fabricated allegations, A.M. missed at least five weeks of parenting time since 2013. Thus, modification was warranted.

As to the trial court's findings on Father's allegations, I think the record supports each one. First, the fabricated nature of Father's allegations was supported by Mother's affidavit, sworn testimony, and a video recording in which A.M. tells Mother's attorney that she wasn't afraid of Mother's boyfriend, but her father wanted her to be. Second, a finding that Father's actions were intentional was supported by several facts in the record. For example, the sheer number of times Father repeated the false allegations—they were repeated in at least three different proceedings—tends to support a finding that Father's deliberate aim was to limit Mother's parenting time. Furthermore, Mother testified that Father denied her the opportunity to visit A.M. on several occasions, including after counsel's efforts to arrange a meeting between A.M. and Mother, who had driven twelve hours from Wisconsin in connection to a court proceeding. Also notable is Father's failure to rebut Mother's categorical denial of Father's allegations regarding her boyfriend's physical abuse of A.M. From each of these facts, and given our well-settled precedent that people are presumed to intend the natural and probable consequences of their voluntary acts, Jacks v. State, 271 Ind. 611, 394 N.E.2d 166, 175 (1979), the trial court could infer that Father's fabricated claims were merely pretextual in nature and were intentionally aimed at disrupting Mother's parenting time.

The trial court also found that Father deliberately concealed A.M.'s school, medical, counseling, daycare, and dental records from Mother. Evidence in the record also supports this finding. Mother testified that she did not have access to A.M.'s educational, counseling, daycare, medical, or dental records and that Father had consistently failed and/or refused to comply with the court's orders to provide her with those documents. Moreover, on cross-examination, Father admitted that he did not list Mother for purposes of giving Mother access to A.M.'s records. He claimed he failed to do so because he did not know Mother's address, but his pleadings suggest otherwise. The trial court's finding on Father's deliberate concealment is, thus, supported by the record and not clearly erroneous.

Finally, the trial court found that the repeated fabrications in three different courts constituted a "blatant disregard of [the trial court's] November 8, 2012 Par-

enting Time Order." App. at 122. The order provided that, "Mr. Montgomery shall cooperate in facilitating parenting time with ... [A.M.] ... in accordance with the Indiana Parenting Time Guidelines ('IPTG') and this Order." App. at 29. To the extent that fabricated allegations were intended to disrupt parenting time outlined by the IPTG, the trial court did not clearly err in finding that Father blatantly disregarded the order.

Turning to the trial court's ultimate decision, I think these findings were sufficient to conclude that modification was warranted. First, it is usually in the child's best interest to have frequent, meaningful, and continuing contact with each parent, and here facts support a finding that A.M. was not receiving the requisite level of contact with Mother. Second, a parent's continuing interference with the other's parenting time may establish a substantial change in the interrelationship of the parties, thus warranting a modification in custody. In re Paternity of J.T., 988 N.E.2d 398, 401 (Ind. Ct. App. 2013). The evidence here supports a finding that Father deliberately tried to interfere with Mother's parenting time and successfully frustrated her attempts to exercise parenting time with A.M., thus a substantial change occurred.

To me, it seems the trial court's findings here were not clearly erroneous and the Court of Appeals should have afforded the trial court's findings greater deference. While the high deference given to trial court in such matters is not absolute, See Kirk, 770 N.E.2d at 307 n.5, I believe sufficient evidence existed here to support the trial court's findings and the judgment. Thus, I would grant transfer and affirm the trial court's judgment.